**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

_____
                                                    )
**SHARYL THOMPSON ATTKISSON, et al.**    )
                                                    )
      **Plaintiffs,**                      )
                                                    )
**v.**                                              )        **Case No. 1:20-cv-68**
                                                    )        **Hon. Richard D. Bennett**
**ROD ROSENSTEIN, et al.,**                  )
                                                    )
      **Defendants.**                       )
_____)


**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS**
**ROSENSTEIN'S AND HENRY'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

DISCUSSION .................................................................................................................. 3

I.      Collateral Estoppel, Not Res Judicata, Bars The Plaintiffs' *Bivens* Claims (Count 1)....... 3

II.     *Bivens* May Not Be Extended To The Electronic Surveillance Context (Count 1)............ 6

III.    Qualified Immunity Bars The *Bivens* And ECPA Claims (Counts 1-2)............................ 7

    A.  The Plaintiffs' Allegations Against Rosenstein and Henry
        Are More Speculative Than Originally Thought (Counts 1-2)........................................ 8

    B.  The Plaintiffs Confirm Their ECPA Claims against Rosenstein and
        Henry Do Not State a Clearly Established Statutory Violation (Count 2) ................... 10

IV.     Neither Fraudulent Concealment Nor Relation Back
       Can Toll The Statutes Of Limitations (Counts 1-2)........................................................ 11

    A.  Fraudulent Concealment Does Not Apply .................................................................. 12

    B.  Relation Back Does Not Apply.................................................................................. 13

V.      Venue Is Improper In This District, Per The Plaintiffs' Own Pleadings (Counts 1-2)..... 14

VI.     Disputed Allegations Cannot Establish Personal Jurisdiction Over Henry..................... 16

VII.    The Plaintiffs Admit They Have Not Perfected Service (Counts 1-2) ............................. 17

CONCLUSION............................................................................................................... 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011)...................................................................................... 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).......................................................................... 2, 3, 8, 9

*Attkisson v. Holder,*
   925 F.3d 606 (4th Cir. 2019) ............................................................... passim

*Attkisson v. Holder,*
   No. 1:17-CV-364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017) ............ 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................... 8

*Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.,*
   495 F. App'x 350 (4th Cir. 2012) ............................................................ 12

*Buckingham v. Gailor,*
   20 F. App'x 243 (4th Cir. 2001) .............................................................. 11

*Buckingham v. Gailor,*
   No. 00-CV-1568, 2001 WL 34036325 (D. Md. Mar. 27, 2001) ............ 11

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,*
   334 F.3d 390 (4th Cir. 2003) ................................................................... 16

*Clark v. Remark,*
   No. 92-1682, 1993 WL 134616 (4th Cir. Apr. 29, 1993)........................ 16

*Collins v. Pond Creek Mining Co.,*
   468 F.3d 213 (4th Cir. 2006) ..................................................................... 3

*Edmonson v. Eagle Nat'l Bank,*
   922 F.3d 535 (4th Cir. 2019) ................................................................... 12

*Goodman v. Praxair, Inc.,*
   494 F.3d 458 (4th Cir. 2007) ................................................................... 14

*Grayson v. Anderson,*
   816 F.3d 262 (4th Cir. 2016) ................................................................... 17

*Hernandez v. Mesa,*
   140 S. Ct. 735 (2020)................................................................................. 6

*Holly v. Scott,*
   434 F.3d 287 (4th Cir. 2006) ..................................................................... 7

*Kentucky v. Graham,*
   473 U.S. 159 (1985).................................................................................. 12

*Marks v. Dann,*
   600 F. App'x 81 (4th Cir. 2015) ............................................................... 2

*McCleary-Evans v. Maryland Dep't of Transp.,*
   780 F.3d 582 (4th Cir. 2015) ..................................................................... 8

*Montana v. United States,*
   440 U.S. 147 (1979)................................................................................... 5

*Muth v. United States,*
   1 F.3d 246 (4th Cir. 1993) ....................................................................... 13

*Mylan Labs., Inc. v. Akzo, N.V.,*
   770 F. Supp. 1053 (D. Md. 1991) .................................................................. 2, 9
*Nichols v. G.D. Searle & Co.,*
   991 F.2d 1195 (4th Cir. 1993) ........................................................................ 16
*Nichols v. G.D. Searle & Co.,*
   783 F. Supp. 233 (D. Md. 1992) ..................................................................... 16
*Peavy v. WFAA-TV, Inc.,*
   221 F.3d 158 (5th Cir. 2000) .......................................................................... 10
*SAS Inst., Inc. v. World Programming Ltd.,*
   874 F.3d 370 (4th Cir. 2017) ............................................................................ 4
*Sedlack v. Braswell Servs. Grp., Inc.,*
   134 F.3d 219 (4th Cir. 1998) ............................................................................ 4
*Tate v. United States,*
   2019 WL 6790686 (C.D. Cal. Nov. 1, 2019) ................................................. 14
*Tate v. United States,*
   No. 15-cv-9323, 2019 WL 6799107 (C.D. Cal. Sept. 18, 2019) .................... 14
*Vaccaro v. Dobre,*
   81 F.3d 854 (9th Cir. 1996) ............................................................................ 17
*Varieur v. BIS Global,*
   No. 16-cv-3111, 2017 WL 4387054 (D. Md. Oct. 2, 2017) ........................... 16
*Vinnedge v. Gibbs,*
   550 F.2d 926 (4th Cir. 1977) .......................................................................... 10
*Wilcox v. Brown,*
   877 F.3d 161 (4th Cir. 2017) ............................................................................ 9
*Wolf v. Richmond Cty. Hosp. Auth.,*
   745 F.2d 904 (4th Cir. 1984) .......................................................................... 16
*Zachair Ltd. v Driggs,*
   141 F.3d 1162 (4th Cir. 1998) .......................................................................... 2
*Zachair Ltd. v Driggs,*
   965 F. Supp. 741 (D. Md. 1997) .................................................................... 2, 9

## Federal Statutes

18 U.S.C. § 922(g)(1) ....................................................................................... 1
18 U.S.C. § 2520(a) ....................................................................................... 10
28 U.S.C. § 1391(b) ....................................................................................... 15
28 U.S.C. § 1391(b)(2) ................................................................................... 14

## Federal Rules

Fed. R. Civ. P. 4(a)(1)(B) ............................................................................... 18
Fed. R. Civ. P. 4(i)(1) ..................................................................................... 18
Fed. R. Civ. P. 4(i)(4)(B) ............................................................................... 17
Fed. R. Civ. P. 15(c) ...................................................................................... 14
Fed. R. Civ. P. 15(c)(1)(C)(ii) ........................................................................ 14

## INTRODUCTION

It turns out the Attkissons are accusing a former U.S. Attorney for the District of Maryland and a former Executive Assistant Director for the Federal Bureau of Investigation ("FBI") of conducting unconstitutional electronic surveillance, and are wasting this Court's time with claims the Fourth Circuit already rejected, based entirely on the say-so of a twice-convicted felon and fraudster.  In their opposition (ECF No. 24) to defendants Rosenstein's and Henry's motion to dismiss (ECF No. 17-1), the plaintiffs for the first time identify Ryan White, who is also a named defendant in this case, as the supposed "Government whistleblower" behind their irresponsible allegations that Rosenstein and Henry ordered government agents to illegally hack computers.  Pls.' Opp'n at 2.  This is the same Ryan White who pleaded guilty in 2016 before this Court of committing health care fraud, in violation of 18 U.S.C. § 1347, and possessing ammunition after a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1).  *See United States v. White*, No. 15-cr-545, ECF No. 33 (D. Md. Apr. 22, 2016).  As to the former charge, White misrepresented to a doctor that he had Lou Gehrig's disease so the doctor would prescribe him oxycodone and hydrocodone.  *Id.*  The latter charge was predicated on White's unrelated prior state felony conviction for possession with intent to distribute illegal drugs.  *See id.*; *Maryland v. White*, No. 12-K-09-2044 (Hartford Cnty. Circuit Ct.).

Nonetheless, the plaintiffs have inserted nearly a full page's worth of new "significant assertions" into their opposition brief that are supposedly derived from an unnamed investigator's interview of White.  *See* Pls.' Opp'n at 2.  They provide no reason why they did not include these double-hearsay "assertions" in their original complaint.  Nor have the plaintiffs moved to amend their complaint to add these "assertions," or so much as requested leave to do so in their opposition brief.  All of this is highly improper and the new "assertions" (on pages 2 and 20 and

footnote 7 of that brief) should be disregarded on this basis alone. *See Marks v. Dann*, 600 F. App'x 81, 89 (4th Cir. 2015) ("Instead, without explanation, [the plaintiff] provided those new facts and allegations—along with transcripts of [the defendant's] deposition in the *Maxtena* litigation, all of which were available to him when he first filed his complaint—with his brief in opposition to [the defendant's] motion to dismiss.  The district court properly deemed these matters outside the complaint and refused to consider them as part of its Rule 12(b)(6) analysis."); *Zachair Ltd. v Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (stating "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," and a court must "restrict[] its consideration to allegations which do appear in the complaint") (internal citations and quotations omitted).

In any event, the "assertions" attributed to White defy "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Why would the government hire a criminal with no apparent qualifications to work on "clandestine operations involving hacking computer systems, servers, emails, and phones?"  Pls.' Opp'n at 2.  Why would that criminal "report[] directly to" a U.S. Attorney (or any prosecutor), rather than a case agent?  *Id.* at 2.  Why didn't any of this come up when White was prosecuted in this Court by the very same U.S. Attorney in 2016, as it most certainly would have if it actually happened?  *See United States v. White*, No. 16-cr-172, ECF No. 15 (D. Md.) (hearing transcript).  And why didn't White mention any of this when he filed his own *pro se* civil lawsuit in this Court in 2017, while serving his federal sentence, in which he claimed the defendants, *including Rosenstein* (along with former Attorneys General and current and former governors of Maryland), conducted "illegal surveillance" of

White's and other detainees' attorney-client privileged communications?  *See White v. United States*, No. 17-1355-JKB, 2017 WL 2418251 (D. Md. June 2, 2017), *aff'd*, 705 F. App'x 198 (4th Cir. 2017).  So even if the Attkissons did not improperly introduce White's supposed "assertions" for the first time in a brief opposing a motion to dismiss, they make no difference because they are more implausible than the allegations actually contained in the complaint.

## DISCUSSION

The rest of the plaintiffs' opposition brief is an exercise in avoidance.  We raised seven separate grounds warranting the dismissal of Rosenstein and Henry:  collateral estoppel, special factors, qualified immunity, statutes of limitations, improper venue, lack of personal jurisdiction, and insufficient service of process.  The Attkissons have no legitimate answer to any of them.

**I.      Collateral Estoppel, Not Res Judicata, Bars The Plaintiffs' *Bivens* Claims (Count 1)**

According to the plaintiffs, the question of whether a *Bivens* remedy is available against Rosenstein and Henry for the allegedly "unlawful surveillance and hacking" of their computers, Am. Compl. ¶ 17, is a "very different question from the one the Fourth Circuit previously addressed."  Pls.' Opp'n at 5.  Hardly.  And there is no better proof of how wrong that statement is than the Attkissons' own discussion of the no-*Bivens*-remedy issue in Section II of their opposition brief.  *See id.* at 6-14.  Virtually all of that section is lifted verbatim from the corresponding section of their Fourth Circuit opening brief (a copy of which is attached to this reply brief as Exhibit D).  *Compare id. with* Ex. D at 21-31.  This leaves no doubt the plaintiffs are asking this Court to review—and contradict—the Fourth Circuit on the same issue that the appellate court decided against them.  *See Attkisson v. Holder*, 925 F.3d 606, 620-22 (4th Cir. 2019) (holding Fourth Amendment *Bivens* claim is not available based on allegations that defendants "unlawfully surveill[ed] the [Attkissons] through their electronic devices").

3

The plaintiffs' actual analysis of collateral estoppel does little to allay that concern.  The Attkissons never acknowledge, much less discuss, the Fourth Circuit's five-element collateral estoppel test.  *Compare* Pls.' Opp'n at 3-6 *with* Defs.' Memo. at 5-9 (citing *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006)).  That said, they appear to dispute only the first element, *i.e.*, whether the no-*Bivens*-remedy issue here is identical to the one previously litigated, *see* Pls.' Opp'n at 3, and tacitly concede the other four elements.

As to that first element, the plaintiffs' response is deeply flawed.  It rests primarily on the false notion that the *issue* is different merely because the *defendants* are different.  *See id.* at 4-6.  This conflates the doctrine of collateral estoppel (or issue preclusion) with that of res judicata (or claim preclusion).  Res judicata typically requires an identity of all parties, whereas collateral estoppel requires an identity of only the party against whom it is asserted.  *See SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017) (res judicata); *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (collateral estoppel).  Undeniably, Sharyl Attkisson, her husband, and her daughter were and are the plaintiffs in both this and their previous case, and they are the parties against whom issue preclusion is being asserted here.  *See Attkisson*, 925 F.3d at 609; ECF No. 13.

It thus does not matter, for collateral estoppel purposes, that the Fourth Circuit's special factors holding applied to the *Bivens* claims against former Attorney General Holder and former Postmaster General Donahoe but not the unnamed John Doe defendants.  *See* Pl.'s Opp'n at 4.  What matters is the appellate court unequivocally and "actually determined in the prior proceeding," *Sedlack*, 134 F.3d at 224, that *the Attkissons* may not bring a Fourth Amendment *Bivens* claim "for alleged illegal intrusions into [their] electronic devices to conduct unlawful surveillance" because "Congress has legislated extensively in the area of electronic surveillance and

intrusions into electronic devices without authorizing damages for a Fourth Amendment viola-

tion in such circumstances." *Attkisson*, 925 F.3d at 609, 621.   To proceed with their *Bivens*

claims in this case, the plaintiffs would have to relitigate, and convince this Court to re-decide,

that precise issue.   *See* Defs.' Mot. at 9-11.   Their recycled special factors section is proof

enough of that.   *See* Pls.' Opp'n at 6-14.

   Apart from a misplaced focus on the defendants' identities, the Attkissons make much of

their implausible allegation that Rosenstein and Henry personally ordered the search of their

electronic devices; they then contrast that with their previous attempt to sue Holder and Donahoe

for "making larger policy choices."   *Id*. at 5.   It is true the Fourth Circuit cited the latter allega-

tion as one among several criteria in determining the plaintiffs' *Bivens* claims against Holder and

Donahoe presented a "new *Bivens* context."   *Attkisson*, 925 F.3d at 621.   But far and away the

most important of those criteria was this:   "[A] claim based on unlawful electronic surveillance

presents wildly different facts and a vastly different statutory framework from a warrantless

search and arrest."   *Id*.   That necessarily remains true regardless of what role any particular de-

fendant allegedly had in the claimed surveillance.   After concluding such a claim arises in a new

*Bivens* context, the Fourth Circuit rejected it due to extensive congressional action "in the area of

electronic surveillance and intrusions into electronic devices."   *Id*.   That also remains true regard-

less whether a defendant is alleged to have made "policy-level decisions," ordered the surveil-

lance, or personally conducted the surveillance.   The Attkissons thus cannot pursue their *Bivens*

claims in this case without risking inconsistent judicial decisions on these issues, which is one of

the key rationales behind the doctrine of issue preclusion.   *See Montana v. United States*, 440

U.S. 147, 153-54 (1979).

As we have shown and the plaintiffs' repurposed appellate brief confirms, all of the elements for applying collateral estoppel to Count 1 of the amended complaint are present here. The *Bivens* claims against Rosenstein and Henry should be dismissed for this reason alone.

## II. *Bivens* May Not Be Extended To The Electronic Surveillance Context (Count 1)

Because the Attkissons' response to the special factors argument in this case is largely a cut-and-paste job from their Fourth Circuit opening brief, *compare* Pls.' Opp'n at 6-14 *with* Ex. D at 21-31, and because the Fourth Circuit rejected their position, *see Attkisson*, 925 F.3d at 621-22, little more need be said on the subject. That is certainly true of their "response" to arguments we did not make and judicial opinions we did not cite. *See, e.g.*, Pls.' Opp'n at 11 n.4, 13-14. Meanwhile, the plaintiffs barely confront the issues we actually did raise.

Regarding the "new *Bivens* context" inquiry, the only change from the plaintiffs' Fourth Circuit briefing is one noted above. The Attkissons suggest the Fourth Circuit "relied heavily on the fact that" Holder and Donahoe, unlike Rosenstein and Henry, were agency heads "laying out policy goals." *Id.* at 12-13. The first part of that premise is demonstrably wrong. The Fourth Circuit concluded the Attkissons' *Bivens* claims arose in a "new *Bivens* context" for three reasons: (1) "Holder and Donahoe held much higher ranks than the line-level FBI agents sued in *Bivens*;" (2) "a claim based on unlawful electronic surveillance presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest;" and (3) the plaintiffs sought to hold Holder and Donahoe liable for "policy-level decisions." *Attkisson*, 925 F.3d at 621. The second of these was clearly the most important, as the appellate court relied on it again, exclusively, in the next step of its analysis. *Id.* at 621-22. The first reason is also equally true of Rosenstein, a former U.S. Attorney, and Henry, a former FBI Executive Assistant Di-

rector.  And as we've pointed out, the first two reasons alone easily satisfy the "broad" new context inquiry.  *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *see* Defs.' Mot. at 10.

Turning to the second step of the *Abbasi* analysis, the plaintiffs have absolutely nothing new to say.  *See* Pls.' Opp'n at 13-14.  They recognize the Fourth Circuit held a damages remedy may not be inferred from the Constitution where "Congress has created several private causes of actions under various statutes governing the surveillance and the integrity of personal computing devices."  *Attkisson*, 925 F.3d at 621.  But the Attkissons argue it is "disingenuous" for the defendants to cite one of those statutes, the Electronic Communications Privacy Act ("ECPA"), as a "viable alternative" while also seeking to dismiss their ECPA claim.  Pls.' Opp'n at 13.  The plaintiffs made this exact same argument, using the exact same language, to the Fourth Circuit.  *See* Ex. D at 30.  The appellate court rightly ignored it, and so should this Court.  *See, e.g.*, *Holly v. Scott*, 434 F.3d 287, 290 (4th Cir. 2006) (stating "neither the absence nor the incompleteness of such a [remedial] scheme represents an invitation for a court to step in to correct what it may perceive as an injustice toward an individual litigant").

Even if this Court evaluated the issue anew, the plaintiffs offer no reason for it to deviate from the Fourth Circuit's judgment that a claim alleging a defendant has "unlawfully surveill[ed] the plaintiffs through their electronic devices" may not be brought pursuant to *Bivens*.  *Attkisson*, 925 F.3d at 620.  Count 1 thus fails to state a claim upon which relief may be granted.

## III.   Qualified Immunity Bars The *Bivens* And ECPA Claims (Counts 1-2)

We have shown both Rosenstein and Henry enjoy qualified immunity from the *Bivens* and ECPA claims because nothing but sheer conjecture ties either of these two defendants personally to the alleged hacking of the plaintiffs' electronics.  *See* Defs.' Opp'n at 12-18.  As if to prove the point, the Attkissons double down on the conjecture in their opposition brief.  *See infra*

Section III(A).  Ironically, though, some of that speculation confirms they are relying on an invalid theory of "procurer" liability under the ECPA and therefore cannot establish a statutory violation, clearly established or otherwise.  *See infra* Section III(B).

### A.      The Plaintiffs' Allegations Against Rosenstein and Henry Are More Speculative Than Originally Thought (Counts 1-2)

First and foremost, the complaint contains no "factual content that [would] allow[] the court to draw the reasonable inference" that Rosenstein and Henry, through their "own individual actions," violated the plaintiffs' statutory and constitutional rights, as is necessary to pass the first step of the qualified immunity test.  *Iqbal*, 556 U.S. at 676, 678; *see Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  On that point "[o]nly speculation can fill the gaps in [their] complaint." *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiff to "raise a right to relief above the speculative level"); Defs.' Mot. at 12-18.

Before addressing those factual gaps, we must correct one of the plaintiffs' many legal errors.  The Attkissons mistakenly declare that their burden to adequately plead a defendant's personal involvement "has nothing to do with qualified immunity."  Pls.' Opp'n at 16.  They further suggest we are "bootstrapping what is actually a 12(b)(6) motion for failure to state a claim into a qualified immunity argument," and that doing so is "logically incoherent."  *Id.*  Perhaps the plaintiffs should tell that to the Supreme Court.  It has squarely held that "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded."  *Iqbal*, 556 U.S. at 673.  So when a trial court is reviewing a Rule 12(b)(6) motion to decide if a complaint contains enough well-pled allegations that a *Bivens* defendant personally violated a plaintiff's constitutional right, then "the sufficiency of [the plaintiff's] pleadings is both inextricably intertwined with and directly implicated by the qualified-

immunity defense." *Id.* at 673 (internal quotations and citations omitted).  *Iqbal* is tellingly altogether absent from the Attkissons' opposition brief.

Also missing from that opposition brief is any substantive response to our painstaking breakdown of just how implausible and conclusory the plaintiffs' allegations about Rosenstein and Henry are.  *See* Defs.' Mot. at 14-18.  The Attkissons gloss over all of that with several more pages lifted wholesale from their Fourth Circuit opening brief.  *Compare* Pls.' Opp'n at 17-20 *with* Ex. D at 40-47.  Then, perhaps recognizing the insufficiency of their allegations, the plaintiffs casually abandon their own theory that the Silk Road Task Force was used to hack their computers as a "red herring."  Pls.' Opp'n at 20-21 n.7.  That theory replaced their previous theory that a former Attorney General and Postmaster General were personally behind the alleged hacking.  *See Attkisson*, 925 F.3d at 611-12.  With both of those conspiracy theories shot down, the plaintiffs just concoct a third and more outlandish one, courtesy of the newly-minted assertions they slip into their opposition brief (what they misleadingly and euphemistically refer to as the "whistleblower statement").  Pls.' Opp'n at 20-21 n.7.  Now they claim it is "not at all farfetched to think that there could be *another*, covert, interagency group assigned to infiltrate the computers of journalists such as Sharyl Attkisson."  *Id*. (emphasis added).  Enough is enough.  The Attkissons are bound by the implausible allegations contained in their complaint and cannot rely on still more fantastical assertions mentioned for the first time in their opposition brief to avoid dismissal.  *See Zachair*, 965 F. Supp. at 748 n.4; *Mylan Labs*., 770 F. Supp. at 1068.

As that opposition brief makes all too clear, the Attkissons have no well-pled facts from which this Court could "draw the *reasonable* inference," *i.e.*, "infer more than the mere possibility," that Rosenstein and Henry each gave or carried out an order to hack into the plaintiffs' computers.  *Iqbal*, 556 U.S. at 678-79 (emphasis added).  Accordingly, qualified immunity bars

all of the claims against these two defendants.  *See*, *e.g.*, *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (holding that liability for constitutional tort claim "'will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights'") (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

### B. The Plaintiffs Confirm Their ECPA Claims against Rosenstein and Henry Do Not State a Clearly Established Statutory Violation (Count 2)

The Attkissons appear to concede, at least for present purposes, the ECPA does not impose civil liability for procuring others to intercept a person's communications.  *See* Defs.' Mot. at 19-20 (collecting cases).  They just declare they "do *not* rely on procurer liability in their Complaint."  Pls.' Opp'n at 21.  This is patently untrue with respect to Rosenstein and Henry.

Here is how the plaintiffs describe who did what to whom in this case:  "The rogue order to target the Attkissons came directly from Agent Henry and Rosenstein," while "White and Agent Bridges were directly involved in the illegal surveillance of the Attkissons' computers and the exfiltration of data."  *Id.* at 2.  So in the plaintiffs' own telling, Rosenstein (then a U.S. Attorney) and Henry (then a FBI Executive Assistant Director) procured, by giving a "rogue order" to, White (some kind of alleged hacker-for-hire) and Bridges (a former U.S. Secret Service agent) to intercept the plaintiffs' communications.  *Id.*

The Attkissons rightly admit that 18 U.S.C. § 2520(a) does not apply to an official "who merely asks others to initiate an electronic surveillance operation."  Pls.' Opp'n at 23.  Yet that is precisely what they claim Rosenstein and Henry did in giving White and Bridges a "rogue order" to hack the Attkissons' computers.  And that is why the ECPA claims against Rosenstein and Henry fail to state a statutory violation.  *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir. 2000) (holding civil liability under ECPA is limited to "illegal interception, disclosure, or

use, and *not* to procuring interception by another"); *Buckingham v. Gailor*, No. 00-CV-1568, 2001 WL 34036325, *6 (D. Md. Mar. 27, 2001), *aff'd*, 20 F. App'x 243 (4th Cir. 2001) (same).

Despite acknowledging that somebody "who merely asks others to initiate an electronic surveillance operation" cannot be held civilly liable under the ECPA, the plaintiffs refer to the distinction between procuring and actually engaging in unlawful electronic surveillance as a "meaningless attempt to split hairs." Pls.' Opp'n at 23. If so, it is hair-splitting Congress intended when it amended the ECPA in 1986, the language of the statute demands, and courts repeatedly enforce. *See* Defs.' Mot. at 18-21. None of this is new to the Attkissons, who raised and lost the exact same arguments about the ECPA in their previous lawsuit. *See Attkisson v. Holder*, No. 1:17-CV-364, 2017 WL 5013230, *8-9 (E.D. Va. Nov. 1, 2017).

Speaking of which, the plaintiffs never address the Fourth Circuit's holding that "the lack of settled precedent supporting [their] ECPA claim," specifically as to the "procurement issue," means the law on that issue is, at a minimum, not clearly established and such a claim thus fails the second prong of the qualified immunity test. *Attkisson*, 925 F.3d at 623. The same is equally true of the plaintiffs' ECPA claims against Rosenstein and Henry. *See* Defs.' Mot. at 21-22.[1]

## IV.    Neither Fraudulent Concealment Nor Relation Back Can Toll The Statutes Of Limitations (Counts 1-2)

Despite their hyperbole (*e.g.*, "disturbing," "Kafkaesque," and "stonewalling"), *see* Pls.' Opp'n at 23-24, the Attkissons tacitly agree the statutes of limitations on their claims against Rosenstein and Henry expired long ago—at the very latest, in December 2017 for their *Bivens* claims and December 2016 for their ECPA claims. *See* Defs.' Mot. at 23. To get around that

---

[1]  Nor do the Attkissons try to explain why they should be allowed to relitigate the ECPA procurement issue. *See* Defs.' Mot. at 22 n.4. This separate instance of collateral estoppel independently justifies the dismissal of the ECPA claims against Rosenstein and Henry. *See id.*

indisputable fact, the plaintiffs try two tacks:  (1) fraudulent concealment and (2) relation back under Rule 15.  *See* Pls.' Opp'n at 25-29.  Both of these are factually and legally untenable.

### A.      Fraudulent Concealment Does Not Apply

We previously explained why the Attkissons cannot satisfy at least two of the elements essential to the doctrine of fraudulent concealment.  *See* Defs.' Mot. at 24-27.  Their opposition brief confirms that all the more.

**1.** First, under both Maryland and federal law, a plaintiff must prove the party pleading the statute of limitations is behind the alleged fraudulent concealment.  *See id*. at 24 (citing *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A*., 495 F. App'x 350, 355-56 (4th Cir. 2012), and *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 545 (4th Cir. 2019)).  The Attkissons recognize this requirement.  *See* Pls.' Opp'n at 26 ("Plaintiffs satisfy their burden to show affirmative concealment when they can allege *the defendant* employed 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'") (emphasis added) (quoting *Edmonson*, 922 F.3d at 553-54).  Yet nowhere do the plaintiffs claim Rosenstein or Henry personally concealed any facts from them, fraudulently or otherwise, about the alleged surveillance or the identities of any unnamed defendants.  But they do repeatedly and explicitly declare it was "the Government" that concealed such information from them.  *Id*.  Even assuming that were true (which is adamantly denied), the plaintiffs did *not* name the United States as a defendant in this case, although they did so in their previous lawsuit.  *See Attkisson*, 925 F.3d at 614.  Conversely, they have sued Rosenstein and Henry solely in their individual, but not official, capacity in this suit.  That is a significant distinction.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-

capacity suit must look to the government entity itself.").  Because there are zero allegations that either Rosenstein or Henry personally engaged in fraudulent concealment, the Attkissons cannot rely on that theory to toll the statutes of limitations.

     **2.**     Second, the plaintiffs must, but cannot, establish they exercised due diligence in pursuing their claims against Rosenstein and Henry.  *See* Defs.' Mot. at 25-27.  The Attkissons describe this argument as "jaw-dropping in its malevolence and absurdity."  Pls.' Opp'n at 27.  Notably, though, there is radio silence from them in response to the Fourth Circuit's devastating remarks about their utter "*lack* of diligence in pursuit of their claims" against, and discovery into the identities of, the John Doe defendants.  *Attkisson*, 925 F.3d at 627 (emphasis added); *see id*. at 609, 613-19, 624-27.  Such well-documented indolence by itself proves how inappropriate it would be to let the Attkissons take advantage of any kind of equitable tolling doctrine.  *See Muth v. United States*, 1 F.3d 246, 251 (4th Cir. 1993); Defs.' Mot. at 25-26.

     **B.**     **Relation Back Does Not Apply**

     Just as inappropriate, if not surreal, is the plaintiffs' attempt to take advantage of the relation-back doctrine under Rule 15.  *See* Pls.' Opp'n at 27-29.  The Attkissons do not seek to amend their complaint in this case to add Rosenstein or Henry as a defendant.  That would be impossible, as they named those two defendants in their original complaint here.  *See* ECF No. 1.  It would also be pointless, as they filed that original complaint in January 2020, several years after the applicable limitations periods expired in December 2016 and December 2017.

     The plaintiffs instead seem to think their original complaint in this case "relates back" to the original complaint in their previous case, which they initiated in D.C. Superior Court in December 2014, simply by virtue of the two cases sharing common factual allegations.  *See* Pls.' Opp'n at 28; *Attkisson*, 925 F.3d at 613 (describing procedural history of Attkissons' previous

suit).  Not surprisingly, they do not cite, and we are not aware of, a single authority using Rule 15's relation-back doctrine in such a bizarre manner.  By its own terms, Rule 15 applies only when a party seeks to amend an earlier pleading in the same action.  *See* Fed. R. Civ. P. 15(c). And to repeat, the plaintiffs do seek to amend anything here.  Rather, they would have this Court believe Rule 15's relation-back doctrine is a free-standing and self-executing principle that can be used outside the confines of Rule 15 to relate an entire civil action back to a totally separate and previously-filed civil action, in separate judicial districts no less, without so much as an accompanying motion, after the previously-filed action has long since been dismissed.  Just to repeat this argument is to defeat it.[2]

## V.      Venue Is Improper In This District, Per The Plaintiffs' Own Pleadings (Counts 1-2)

Turning to venue, the Attkissons confirm they are proceeding solely under the venue provision requiring them to show "a substantial part of the events or omissions giving rise to the claim occurred" in the forum state.  28 U.S.C. § 1391(b)(2); *see* Pls.' Opp'n at 29.  As we've pointed out, their allegations mirror that statutory language word-for-word, but in reference to a completely different judicial district.  *See* Am. Compl. ¶¶ 9-11, 100 (alleging a "substantial part of such conduct[, *i.e.*, the alleged interception of their communications,] occurred in the Eastern District of Virginia," and that "much of the surveillance alleged in this complaint occurred at Ms.

---

[2]  Not that it matters, given its irrelevance here, but the plaintiffs could not satisfy the basic requirements of the relation-back doctrine in any event.  They suggest Rosenstein and Henry "knew or should have known that the [previous] action would have been brought against" them, Fed. R. Civ. P. 15(c)(1)(C)(ii), merely because the U.S. Attorney's Office represented Holder and Donahoe in that previous action, or because "this case has generated considerable media attention."  Pls.' Opp'n at 29 & n.10.  However important the plaintiffs may consider their own case, that does not change the law.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 471 (4th Cir. 2007) (en banc) ("Most parties substituted for 'Doe' defendants would be protected against being added either because they were prejudiced or because they did not have proper notice."); *Tate v. United States*, No. 15-cv-9323, 2019 WL 6799107, at *8 (C.D. Cal. Sept. 18, 2019), *report and recommendation adopted*, 2019 WL 6790686 (C.D. Cal. Nov. 1, 2019) (explaining that notice to United States under Rule 15(c)(2) does not apply to *Bivens* defendants) (collecting cases).

Attkisson's residence" in Virginia), *quoted in* Defs.' Mot. at 28-29.  Without ever owning up to those allegations, the Attkissons argue our Rule 12(b)(3) motion "borders on the frivolous" and is "inexplicable."  Pls.' Opp'n at 29-30.

What's inexplicable is how the plaintiffs so freely ignore their own pleadings, at least the ones betraying the arguments they make in their opposition brief.  Or how they so quickly return to their trumped-up theory about a "clandestine multi-agency task force based in Baltimore," *id*. at 30 (citing Am. Compl. ¶¶ 12, 28, 42-43), separate and apart from the Silk Road Task Force, that supposedly targeted journalists and used "IP addresses assigned to the [U.S. Postal Service]," Am. Compl. ¶ 43.  The existence of a second "covert" group targeting journalists is, once again, pure conjecture and deserves no further attention.  *See supra* at 1-3, 8-9.  As for IP addresses assigned to the U.S. Postal Service, assuming they were somehow connected to the alleged hacking of the Attkissons' computers, the plaintiffs plead no plausible basis to connect such IP addresses to Baltimore (or anywhere else in Maryland).  That theory becomes all the more implausible given the judicially-noticeable fact that the U.S. Postal Inspection Service conducts thousands of investigations every year throughout the country, not just in Maryland.  *See U.S. Postal Inspection Service Annual Report FY 2018*, U.S. Postal Inspection Service, at 41, https://www.uspis.gov/wp-content/uploads/2019/05/2018-AR.pdf (last visited Mar. 24, 2020).

So there are no plausible allegations that a "substantial part of the events or omissions giving rise" to the plaintiffs' claims occurred in Maryland.  28 U.S.C. § 1391(b).  But there are several explicit allegations that a substantial part of the claimed surveillance occurred in Virginia.  *See* Am. Compl. ¶¶ 9-11, 28, 36, 46, 54, 60, 62-65, 68, 89, 100.  Based on the latter, venue is improper in this district and the entire action is subject to dismissal under Rule 12(b)(3).

**VI.     Disputed Allegations Cannot Establish Personal Jurisdiction Over Henry**

When a defendant submits a sworn declaration as part of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction that "contradicts the allegations in the complaint, the plaintiff bears the burden to present an affidavit or other evidence showing jurisdiction exists." *Varieur v. BIS Global*, No. 16-cv-3111, 2017 WL 4387054, at *1 (D. Md. Oct. 2, 2017); *see Wolf v. Richmond Cty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984); *Clark v. Remark*, No. 92-1682, 1993 WL 134616, *2 (4th Cir. Apr. 29, 1993) (unpublished) ("The plaintiff, however, must present affidavits or other evidence if the defendant counters plaintiff's allegations with evidence that minimum contacts do not exist."); *Nichols v. G.D. Searle & Co*., 783 F. Supp. 233, 235 (D. Md. 1992), *aff'd*, 991 F.2d 1195 (4th Cir. 1993).   Henry did just that.   *See* ECF No. 17-4, Defs.' Exh. B, Henry Decl. (Mar. 25, 2020).   In his declaration, Henry swore under penalty of perjury that between March 2006 and his retirement from the FBI in March 2012, he was assigned continuously to FBI Headquarters in Washington, D.C., and maintained his permanent place of residence in Virginia.   *See id*. ¶¶ 2-3.   Henry further testified that the only time period he worked or lived in Maryland while with the FBI was from July 2001 until September 2004—long before March 2011, when the Attkissons wrongly allege Henry was working for the FBI in Baltimore. *See id*. ¶¶ 4-5; Am. Compl. ¶ 28.

The Attkissons counter Henry's declaration with no evidence whatsoever, and merely repeat the speculative, conclusory, and disputed allegations of their complaint.   *See* Pls.' Opp'n at 31 ("The Complaint alleges that Henry was physically located in Maryland when he worked with Rosenstein and others and conducted the unlawful surveillance and hacking of the Attkissons' computer systems.   Compl. ¶¶ 17, 28."); *see id*. at 31-33.   Nor do they even ask for jurisdictional discovery, not that such a request would be proper here.   *Cf. Carefirst of Maryland, Inc.*

*v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."). They do try to change the proper legal standard for establishing personal jurisdiction over Henry, but that is all for naught. *See* Pls.' Opp'n at 30-33. Without any evidence to rebut Henry's declaration, or any request to obtain such evidence, the Attkissons cannot meet their burden on that issue no matter what standard they use. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) ("Ultimately, however, a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence."). Henry therefore should be dismissed under Rule 12(b)(2).

## VII.   The Plaintiffs Admit They Have Not Perfected Service (Counts 1-2)

Citing an out-of-circuit case that an amendment to Rule 4 made obsolete some twenty years ago, the plaintiffs suggest they "were unaware of the requirement to serve the United States in a *Bivens* action." Pls.' Opp'n at 34 (citing *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996)). They do so despite naming two *Bivens* defendants in their previous lawsuit and admitting the plain language of Rule 4(i)(3) requires service on the United States in a *Bivens* action. *Id*. And now, while confessing error but without any apparent irony, the Attkissons rely on the text of Rule 4 to beg forgiveness for their failure to comply with the rule for the past seven months. *See id*. That request should be denied.

The plaintiffs are correct that Rule 4 says a "court must allow a party a reasonable time to cure its failure to . . . serve the United States" in a *Bivens* action "if the party has served the United States officer or employee." Fed. R. Civ. P. 4(i)(4)(B). But the Attkissons have *not* properly served Rosenstein, as we discuss in a moment. In addition, they were made aware of their failure to serve the United States on April 14, 2020, the date we filed our motion to dismiss. They have

done nothing since then to complete such service.  We realize the global pandemic has slowed the pace of civil litigation.  Even so, serving the United States is as simple as sending a summons and complaint to the relevant U.S. Attorney's Office by certified mail.  *See* Fed. R. Civ. P. 4(i)(1).  And if the plaintiffs could file two separate motions for extensions of time to file their opposition brief over the past four months, *see* ECF Nos. 18, 20, then surely they could have sent a certified mailing, or at least filed a timely motion requesting more time to perfect service.  They did neither.  Under these circumstances, it would be *un*reasonable to reward the Attkissons for their dilatoriness by giving them another 150 days, beyond the original 90 days that expired on April 10, 2020, to serve the United States.

As for Rosenstein, the plaintiffs don't defend their improper attempt to serve him by mail.  *See* Defs.' Mot. at 33-34.  Rather, they argue their process server went to Rosenstein's home and followed the "verbal directions" of his wife to leave an envelope with a summons and complaint "in the mailbox next to the [front] door."  Pls.' Opp'n at 34-35.  That envelope, however, had nothing but the name "Rosedale" written on it, while the summons inside it was unsigned and addressed to none other than Ryan White at Mr. White's (apparently outdated) address in Rosedale, Maryland.  *See* Ex. E (photos of "Rosedale" envelope and enclosed summons, provided by Rosenstein to the undersigned).  This is plainly ineffective service on Rosenstein. *See* Fed. R. Civ. P. 4(a)(1)(B), (F) (requiring summons "be directed to the defendant" and "be signed by the clerk").

None of this should be excused. The Fourth Circuit admonished the plaintiffs specifically about their "lack of diligence for purposes of Rule 4(m)" in a *Bivens* suit.  *Attkisson*, 925 F.3d at 627.  The text of Rule 4 is clear.  And at no point do the Attkissons offer any legitimate reason for either failing to effect proper and timely service or waiting nearly seven months since they

initiated this suit to make any kind of request for additional time to effect proper service (and then doing so only with an off-hand comment in an opposition brief).  The plaintiffs' service deficiencies alone thus warrant the dismissal of Rosenstein and Henry under Rule 12(b)(5).

## <u>CONCLUSION</u>

For the reasons stated above and in their opening brief, the Court should grant Rosenstein's and Henry's motion to dismiss and dismiss both of them as defendants.

Respectfully submitted this 4th day of September 2020,

ETHAN P. DAVIS
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

ANDREA W. MCCARTHY
Senior Trial Counsel, Torts Branch

/s/ *James R. Whitman*
JAMES R. WHITMAN (D.C. Bar No. 987694)
Senior Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4169
Fax: (202) 616-4314
E-mail:  james.whitman@usdoj.gov

Attorneys for Rod Rosenstein and Shawn Henry