IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SHARYL THOMPSON ATTKISSON,** et al., | * | |
| | * | |
| Plaintiffs, | | |
| | * | Civil Action No. RDB-20-0068 |
| v. | | |
| | * | |
| **ROD ROSENSTEIN,** et al., | | |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On January 10, 2020, Plaintiffs Sharyl Thompson Attkisson, James Howard Attkisson, and Sarah Judith Starr Attkisson (collectively "Plaintiffs" or the "Attkissons") filed this suit against Defendants Rod Rosenstein, Shawn Henry, Sean Wesley Bridges, Robert Clarke, Ryan White, and Unknown Named Agents 1-50 of the Department of Justice, in their individual capacities. (*See* ECF No. 1.) The now operative Amended Complaint asserts two claims against the Defendants. (*See* ECF No. 15.) Count 1 seeks compensatory damages under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for alleged violations of the Fourth Amendment to the United States Constitution. (*Id.*) Count 2 alleges a violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511. (*Id.*)

Presently pending is the Defendants Rosenstein and Henry's Motion to Dismiss (ECF No. 17), in which the Defendants not only contend that the Plaintiffs have failed to state a claim for relief against each of them individually, but that the District of Maryland is an improper venue for their suit. The parties' submissions have been reviewed and no hearing is

necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, the Defendants' Motion to Dismiss (ECF No. 17) is GRANTED.  Specifically, the Plaintiffs' claims are DISMISSED WITH PREJUDICE as to Defendants Rosenstein and Henry pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, as the Plaintiffs fail to state a claim for relief against either Defendant.  Additionally, the Plaintiffs' claims against the remaining named and unnamed Defendants are DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(3) to the filing of an Amended Complaint within a specified time period.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Plaintiff Sharyl Attkisson works as an investigative reporter for CBS News.  (ECF No. 15 ¶ 9.)  Plaintiff James Attkisson is Sharyl's husband, and Plaintiff Sarah Attkisson is James and Sharyl's daughter.  (*Id.* ¶¶ 10-11.)  All three are residents of Leesburg, Virginia.  (*Id.* ¶¶ 9-11.)  Defendant Rod Rosenstein ("Rosenstein") is a resident and citizen of Maryland and the former U.S. Attorney for the District of Maryland.  (*Id.* ¶ 12.) Defendant Shawn Henry ("Henry") is a resident and citizen of Virginia and previously served as the head of the Washington, D.C. field office of the Federal Bureau of Investigation ("FBI") in addition to serving as the Executive Assistant Director of the Criminal, Cyber, Response, and Services branch under FBI Director Robert Mueller.  (*Id.* ¶¶ 13, 20.)  Defendant Sean Wesley Bridges ("Bridges") is a resident and citizen of Virginia who served as a Special Agent with the U.S. Secret Service for six years operating out of the Baltimore, Maryland field office.

(*Id.* ¶¶ 14, 18.)  Between 2012 and 2014, he was allegedly assigned to the Baltimore Silk Road Task Force, a multi-agency group investigating illegal activity on the covert online marketplace for illicit goods known as Silk Road.  (*Id.* ¶ 18.)  Defendant Ryan White ("White") is a resident and citizen of Maryland who allegedly worked as an undercover informant to the FBI, U.S. Secret Service, Drug Enforcement Administration, and the Bureau of Alcohol, Tobacco, and Firearms.  (*Id.* ¶¶ 15, 21.)  The final named defendant is Defendant Robert Clarke ("Clarke"), whose address and citizenship are unknown.  (*Id.* ¶ 16.)  He has also allegedly served on the Silk Road Task Force.  (*Id.* ¶ 19.)

According to the Attkissons, Sharyl was responsible for investigating, writing, and publishing news stories on a federal drug-trafficking investigation that came to be known as "Fast and Furious."  (*Id.* ¶ 9.)  The Attkissons allege that following the airing of Sharyl's "Fast and Furious" report on CBS, government officials began actively seeking to identify government insiders who were "leaking" information to Sharyl and CBS by conducting home computer and telephone surveillance of the Attkisson family.  (*Id.* ¶¶ 28-29.)  The Amended Complaint alleges that "some" of this purported surveillance originated with the Baltimore-based Silk Road Task Force.  (*Id.* ¶¶ 18, 43.)  According to the Plaintiffs, that task force included representatives of the United States Postal Service ("USPS") and used IP addresses assigned to USPS on more than one occasion.  (*Id.* ¶ 43.)

Upon discovery of the alleged hacking of their computers and phones, the Attkissons first filed suit in December of 2014 in the Superior Court of the District of Columbia against former U.S. Attorney General Eric Holder, former Postmaster General Patrick Donahoe, and "John Doe" agents, alleging violations of the First and Fourth Amendments to the U.S.

Constitution based on the alleged electronic intrusions on their devices. *See Attkisson v. Holder*, 113 F. Supp. 3d 156 (D.D.C. 2017). Defendants Holder and Donahoe removed the case to the U.S. District Court for the District of Columbia. *Id.* at 159. In July 2016, that court consolidated the Plaintiffs' initial lawsuit with a complaint filed by Sharyl Attkisson in September 2015 under the Federal Tort Claims Act ("FTCA") against the United States. *See Attkisson v. Holder*, 241 F. Supp. 3d 207, 211 (D.D.C. 2017). A special venue provision under the FTCA requires FTCA claims be prosecuted in the judicial district where (1) the plaintiff resides or (2) where the act or omission complained of occurred. *See* 28 U.S.C. § 1402(b). Accordingly, the Attkissons' lawsuit was transferred to the U.S. District Court for the Eastern District of Virginia on March 19, 2017, based on the fact that the alleged surveillance was of their Virginia home. *Attkisson*, 241 F Supp. 3d at 212-15.

On September 15, 2017, the Attkissons filed a Consolidated Complaint in the Eastern District of Virginia to clarify their claims against the defendants. In the Consolidated Complaint the Attkissons alleged violations of their First and Fourth Amendment rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as well as violations of the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act, the Computer Fraud and Abuse Act, the Foreign Intelligence Surveillance Act, the Virginia Computer Crimes Act, and common law trespass to land and chattel. *See Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230 (E.D. Va. Nov. 1, 2017), *aff'd*, 919 F.3d 789 (4th Cir. 2019), *withdrawn from bound volume, amended and superseded on reh'g*, 925 F.3d 606 (4th Cir. 2019), *as amended* (June 10, 2019), and *aff'd*, 925 F.3d

606 (4th Cir. 2019), *as amended* (June 10, 2019).  The Consolidated Complaint named Holder, Donahoe, and the unnamed John Doe agents, but did not name the United States.  *Id.*

On November 1, 2017, Judge Brinkema of the U.S. District Court for the Eastern District of Virginia dismissed named Defendants Holder and Donahoe from the suit.  *Id.*  The Plaintiffs had specifically alleged that Holder was personally involved in discussions that centered on Sharyl's "Fast and Furious" reporting, and that he directed one of his aides to "get a 'handle'" on her reporting.  *Id.* at *4.  The Plaintiffs also alleged that Donahoe was ultimately responsible for the use of the USPS network to infiltrate the Attkissons' devices and the unconstitutional monitoring of mail as part of a mass surveillance program.  *Id.*

With the dismissal of Holder and Donahoe, as well as the dismissal of two counts alleged under Virginia law, the suit moved forward against the John Doe agents on the federal statutory and *Bivens* claims.  The Attkissons attempted to rejoin the United States as a defendant and filed an Amended Complaint adding new defendants including the FBI and corporate entities which they alleged facilitated the unlawful surveillance.  However, on May 15, 2018, Judge Brinkema dismissed all remaining claims, ruling that the Attkissons had violated several of the court's earlier orders with regard to amending their complaint.  *See Attkisson v. Holder*, 925 F.3d at 619 (citing *Attkisson v. Holder*, No. 1:17-cv-00364 (E.D. Va. May 15, 2018)).  Although the Plaintiffs' procedural violations sufficed to dismiss the Amended Complaint, Judge Brinkema provided additional reasons for the dismissal, including that after more than three years of litigation, the unnamed agents had never been identified or served, and that the Plaintiffs had made "no substantial progress" in that regard.  *Id.*

5

The United States Court of Appeals for the Fourth Circuit affirmed both of Judge Brinkema's decisions in *Attkisson v. Holder*, 925 F.3d 606 (4th Cir. 2019). Yet, on January 10, 2020, the Plaintiffs once against filed suit in this Court against named and unnamed government officials, alleging a violation of the Fourth Amendment to the Constitution under *Bivens* (Count 1) and a violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511 and 2520 (Count 2). (Complaint, ECF No. 1; Amended Complaint, ECF No. 15.) In this action, the Attkissons now claim they have acquired details regarding the involvement of "key individuals" from "a person involved in the wrongdoing who has come forward to provide information." (ECF No. 15 ¶ 3.) According to this anonymous source, Defendant Rosenstein, acting as the U.S. Attorney for the District of Maryland, ordered Co-Defendants, Henry, Bridges, Clarke, and White, to conduct home computer surveillance on the Attkisson family in March 2011. (*Id.* ¶ 28.) The Plaintiffs allege that the Defendants were all government employees "connected to" the special, multi-agency, federal government "Silk Road Task Force" based in Baltimore, Maryland. (*Id.*)

On April 13, 2020, Defendants Rosenstein and Henry filed the presently pending Motion to Dismiss (ECF No. 17), seeking to dismiss the case on several grounds including failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and improper venue under Rule 12(b)(3).

## STANDARD OF REVIEW

### I. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

**II. Motion to Dismiss under Rule 12(b)(3)**

Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, a court may dismiss a case for improper venue. Fed. R. Civ. P. 12(b)(3). "In this circuit, when venue is challenged

by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper." *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 679-80 (D. Md. 2010) (citing *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 471 (D. Md. 2002)). "[I]n deciding a motion to dismiss [for improper venue], all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc.*, 368 F. Supp. 2d 450, 454 (D. Md. 2005) (quoting *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 385 (D. Md. 2005)).

## ANALYSIS

### I. Plaintiffs fail to state a claim against Defendants Rosenstein and Henry in Counts 1 and 2 of the Amended Complaint.

#### A. Count 1 – the *Bivens* claim.

In Count 1 of the Amended Complaint, the Attkissons allege that the Defendants violated their Fourth Amendment rights by unlawfully surveilling the Plaintiffs through their electronic devices. (ECF No. 15 ¶¶ 100-06.) They seek damages for that alleged injury pursuant to the U.S. Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (*Id.*) In *Bivens*, the U.S. Supreme Court recognized an implied cause of action for damages against federal officers alleged to have violated a citizen's rights under the U.S. Constitution. 403 U.S. at 396-97. The Court's opinion specifically authorized the recovery of damages in a situation involving an unlawful search and arrest in the plaintiff's home. *Id.* at 389. Under *Bivens*, plaintiffs may seek compensatory damages from federal officials individually for alleged violations of their constitutional rights. *Id.*

As discussed above, this case is not the Plaintiffs' first attempt to secure legal redress for the alleged unlawful surveillance of their electronic devices. In 2014, the Plaintiffs brought

suit against numerous named and unnamed government officials, including former Attorney General Eric Holder and former Postmaster General Patrick Donahoe. *See Attkisson*, 925 F.3d 606. In the Consolidated Complaint in that suit, the Attkissons alleged that Holder, Donahoe, and the other unnamed agents violated their Fourth Amendment rights by unlawfully surveilling the Plaintiffs through their electronic devices. *Id.* at 620. They sought damages for that alleged injury pursuant to *Bivens*, 403 U.S. at 395. Holder and Donahoe moved for dismissal of that claim against them, arguing, in part, that *Bivens* should not be extended to the new context presented by the Plaintiffs' case. *See Attkisson*, 2017 WL 5013230, at *5. Judge Brinkema of the U.S. District Court for the Eastern District of Virginia agreed, dismissing the *Bivens* claim against both Holder and Donahoe on those grounds. *Id.* at *8.

The Plaintiffs are barred from now asserting the exact same claim under *Bivens* against two of the new defendants, Rosenstein and Henry. "'Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). A party seeking to invoke collateral estoppel must establish five elements: "(1) that 'the issue sought to be precluded is identical to one previously litigated' (element one); (2) that the issue was actually determined in the prior proceeding (element two); (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' (element three); (4) that the prior judgment is final and valid (element four); and (5) that the party against whom collateral estoppel is asserted 'had a

9

full and fair opportunity to litigate the issue in the previous forum' (element five)." *Id.* (quoting *Sedlack v. Braswell Servs. Group Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).

All of these factors are met in this case. First, the issues are identical. The gravamen of the Plaintiffs' claim under Count 1 is that the Plaintiffs have a right to recover compensatory damages against Rosenstein and Henry as individuals under *Bivens* based on unlawful electronic surveillance. (ECF No. 15 ¶ 100-06.) However, the Fourth Circuit in *Attkisson* determined that where plaintiffs claim violation of Fourth Amendment rights on the basis of unlawful electronic surveillance against high-level government officials, such circumstances present a new *Bivens* context. 925 F.3d at 621-22. The Court refused to create the remedy the Attkissons requested. *Id.* The case involved the same alleged scheme of electronic surveillance, only it named different high level government officials as defendants. There is no dispute that the issue of whether a *Bivens* claim was cognizable was critical in that case and that the judgment was final and valid. There is no indication that the Plaintiffs were not afforded a "full and fair opportunity to litigate" their claims—the litigation of their previous suit lasted more than three years. Accordingly, the doctrine of collateral estoppel is applicable in this case.

Even if the claim against Rosenstein and Henry were not barred by the doctrine of collateral estoppel, Plaintiffs do not state a claim against them under the *Bivens* doctrine. As the Fourth Circuit recently explained in *Earle v. Shreves*, "[i]n the years since *Bivens* was decided . . . the Supreme Court's approach to implied damage remedies has changed dramatically, to the point that 'expanding the *Bivens* remedy is now a disfavored judicial activity.'" __ F.3d __, No. 19-6655, 2021 WL 896399, at *2 (Mar. 10, 2021 4th Cir. 2021) (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)). The Supreme Court's decision in *Abbasi*

narrowed the circumstances in which a plaintiff may successfully state a claim under the principles established in *Bivens*. 137 S. Ct. at 1857-58. Under *Abbasi*, to determine whether a *Bivens* remedy exists, the court must ask (1) whether the claim "presents a new *Bivens* context," and (2) if it does, whether any "special factors counsel[ ] hesitation" in recognizing a new remedy "in the absence of affirmative action by Congress." *Id.* at 1857-59.

The Fourth Circuit's decision in *Attkisson* explains why the Plaintiffs' same claims in this case fail to state a claim for relief under the Supreme Court's framework. 925 F.3d at 622. In the Plaintiffs' first suit, the Court found that the Attkissons' *Bivens* claim against Holder and Donahoe differed meaningfully from the claim raised in *Bivens* in numerous ways:

> First, Holder and Donahoe held much higher ranks than the line-level FBI agents sued in *Bivens*. Second, a claim based on unlawful electronic surveillance presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest. Finally, the plaintiffs seek to hold high-level officials accountable for what they themselves frame as policy-level decisions to target internal leaks to the media.

*Id.* at 621. Having found that the Plaintiffs' claim "assuredly" presented a "new *Bivens* context," the Court turned to an analysis of the "special factors" identified in *Abbasi* and found that several of those factors "counsel[ed] hesitation." *Id.* The Court noted that Congress has legislated extensively in the area of electronic surveillance without authorizing a Fourth Amendment violation in such circumstances, providing "'sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong.'" *Id.* at 621-22. Given the Fourth Circuit's decision in *Attkisson*, Count 1 as alleged against Rosenstein and Henry is without merit under *Abbasi* for the exact same reasons detailed above: the circumstances present a new *Bivens* context given the high ranks of the Defendants and the nature of the alleged Fourth Amendment intrusion,

11

and Congress' extensive legislation in the area of electronic surveillance strongly counsels against creation of a new remedy.

### B. Count 2 – the Electronic Communications Privacy Act claim.

The Attkissons' claim against Rosenstein and Henry under Count 2 does not fare any better. In Count 2 the Plaintiffs allege that the Defendants' alleged surveillance was in violation of the Electronic Communications Privacy Act ("ECPA"), 18. U.S.C. §§ 2511 and 2520. (ECF No. 15 at p. 30-31 ¶¶ 98-103.) Under Section 2511, "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication" violates the ECPA. 18 U.S.C. § 2511(1)(a). The Attkissons' Amended Complaint alleges that Rosenstein ordered other government agents "to conduct home computer surveillance on the Attkissons and other U.S. citizens." (ECF No. 15 ¶ 28.) The Amended Complaint alleges that Defendant Henry and others "ultimately were involved in the surveillance operation of the Attkissons." (*Id.*) The Plaintiffs are pursuing their claim against the Defendants under the ECPA's private right of action, which provides that:

> any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation.

18 U.S.C. § 2520(a). Again, the Attkissons' claim in this case mirrors that of their claim against Holder and Donahoe in their previous suit, *see Attkisson*, 925 3F.3d at 622, and again, the decisions of the District Court and the Fourth Circuit in that previous suit are instructive.

With respect to Count 2, both Rosenstein and Henry are protected by the doctrine of qualified immunity. Qualified immunity protects government officials from civil liability and

suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When an official asserts the defense of qualified immunity, as Rosenstein and Henry have done in this case, the plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted). If the Plaintiffs in this case fail to establish either of these prongs, their ECPA claim fails and the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In *Attkisson*, the Fourth Circuit held that to the extent the earlier defendants Holder and Donahoe procured any wrongful interception, use, or disclosure of the Attkissons' electronic communications, they did not violate a clearly established right. 925 F.3d at 623. "To show a clearly established right, a plaintiff must identify existing precedent that 'placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741.) As the district court explained in its opinion dismissing the Attkissons' claims against previous defendants Holder and Donahoe, "[c]ourts have split on whether a plaintiff may bring suit under § 2520 against a 'procurer,' and the Fourth Circuit has not yet ruled on the issue." *Attkisson*, 2017 WL 5013230 at *9. In 1986, Congress amended § 2520 so that it did not exactly parrot § 2511 by removing language regarding the availability of a remedy against those who "procure," rather than directly engage in, an alleged interception. *Id.* at *8. Specifically Judge Blake of this Court has previously held that the 1986 amendment eliminated the availability of a civil action against a "procurer." *See Buckingham v. Gailor*, No. CCB-00-1568, 2001 WL

13

34036325, at *6 (D. Md. Mar. 27, 2001), *aff'd*, 20 Fed. Appx. 243 (4th Cir. 2001) (per curiam). However, some courts have held that a civil action based on procurement remains viable. *See, e.g.*, *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006). Given this "lack of settled precedent," the Fourth Circuit previously held that Holder and Donahoe were entitled to qualified immunity. *Attkisson*, 925 F.3d at 623 (citing *Abbasi*, 137 S. Ct. at 1868).

The same reasons apply directly in this case to Rosenstein and Henry. For the same reasons Holder and Donahoe were protected by the doctrine of qualified immunity in the Plaintiffs' earlier suit, Defendant Rosenstein is clearly protected by the doctrine in this case. The Plaintiffs' sole allegation related to Rosenstein's involvement in the alleged electronic surveillance of their devices is that he "ordered" others to engage in the allegedly unlawful conduct. (*See* ECF No. 15 ¶¶ 12, 28.) Without a clearly established right to recover against a mere "procurer" of illegal interceptions, the Plaintiffs cannot establish both prongs of the test as required to overcome Rosenstein's claim of qualified immunity.

With respect to Defendant Henry, it is unclear whether the Plaintiffs have alleged that Henry's conduct was anything more than procurement. The two allegations related to Henry are that he was one of the individuals "ordered" by Rosenstein "to conduct home computer surveillance on the Attkissons and other U.S. Citizens," and that he was "ultimately . . . involved in the surveillance operation of the Attkissons." (*Id.* ¶¶ 17, 28.) The fact that someone was "involved in" a surveillance operation does not necessarily mean that he was "the person who engaged in the actual interception, disclosure, or use of a communication." *See Attkisson*, 2017 WL 5013230, at *9. Nevertheless, even if the Plaintiffs could be said to have established the "clearly established right" prong of the qualified immunity test, they have

14

undoubtedly failed to establish the prong which requires them to show that Henry personally violated the Attkissons' rights.

To survive a motion to dismiss where a defendant has asserted the defense of qualified immunity, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference" that "each Government-official defendant, *through the official's own individual actions*, has violated" the plaintiff's clearly established rights.  *See Iqbal*, 556 U.S. at 676, 678 (emphasis added).  As explained by the Fourth Circuit in *Wilcox v. Brown*, a plaintiff may only defeat the defense of qualified immunity where it is "'affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.'"  877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).  The allegations that Henry was one of several individuals ordered to conduct surveillance and was ultimately "involved in" that alleged surveillance are mere conclusory statements devoid of any further factual enhancement.  Additionally, it is unclear how or why the head of an FBI office in Washington would be involved in surveillance in Virginia or connected to a Baltimore-based task force.  In sum, the Plaintiffs have not pled any facts to suggest that Henry personally participated in the alleged unlawful hacking of their electronic devices.

Defendants Rosenstein and Henry cannot be held liable for violation of the Electronic Communications Privacy Act ("ECPA") in this case.  Having asserted the defense of qualified immunity, the Plaintiffs bear the burden of demonstrating that the Defendants were personally involved in the violation of their constitutional or statutory rights, as well as that such rights were "clearly established" at the time of the challenged conduct.  *See al-Kidd*, 563 U.S. at 735.  Plaintiffs can do neither.

**II.   Venue.**

As provided above, "the plaintiff bears the burden of establishing that venue is proper." *Jones*, 752 F. Supp. 2d at 679 (internal citation omitted). The proper venue for *Bivens* and ECPA claims is determined by the general venue provision, 28 U.S.C. § 1391(b). *See Stafford v. Briggs*, 444 U.S. 527, 544 (1980). Under § 1391(b), a plaintiff has three options for where to bring a civil action. He may bring an action in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ."; or (3) "if there is no district in which an action may otherwise be brought" as provided in (1) and (2), "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 18 U.S.C. § 1391(b). As the Plaintiffs allege, the remaining Defendants are not all residents of Maryland: Defendant Bridges is a resident of Virginia (*see* ECF No. 15 ¶ 14), Defendant White is a resident of Maryland (*id.* ¶ 15), and the Plaintiffs completely fail to allege the citizenship or resident of Defendant Clarke (*id.* ¶ 16). Therefore, this Court turns to an analysis under § 1391(b)(2).

At this stage, the Plaintiffs have failed to establish that venue is proper in the District of Maryland under § 1391(b)(2). In the Amended Complaint, the Plaintiffs allege that the Silk Road Task Force and its members were physically located in Baltimore, Maryland, and that "some" of the purported surveillance "originated" from that group. (ECF No. 15 ¶ 43.) The Plaintiffs also allege that the Defendants were "connected" to that task force in Maryland and located in Maryland when Rosenstein allegedly gave the order to conduct the unlawful surveillance. (*Id.* ¶ 6.) Yet, the Amended Complaint is devoid of any factual allegations with

16

respect to actual conduct related to the alleged surveillance which occurred in Maryland. In fact, the Plaintiffs specifically allege in the Amended Complaint that "[a] substantial part of such conduct occurred *in the Eastern District of Virginia*." (*Id.* ¶ 100 (emphasis added).) As they assert, in late 2011, they began to notice "anomalies in numerous electronic devices at their home in [Leesburg,] Virginia." (*Id.* ¶ 36.) All devices they allege to have been hacked used the Verizon FiOS line "installed in [the Attkissons'] home" in Virginia. (*Id.*) Additionally, as the Plaintiffs state "much of the surveillance alleged in [the] complaint occurred at [the Attkissons'] residence." (*Id.* ¶¶ 10, 11.) The conclusory statements that the alleged surveillance was performed by individuals in Maryland, unsupported by any factual allegations, lie in contrast to the Plaintiffs' numerous assertions regarding conduct performed and events which occurred in the Eastern District of Virginia. The facts as currently pled are not "sufficiently substantial" to support a finding that the District of Maryland is a proper venue for this suit. *See Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).

Further, as stated above, when the Attkissons filed their original suit related to the alleged unlawful surveillance of their electronic devices back in 2014, they filed such suit in the Superior Court of the District of Columbia. After removal to the U.S. District Court for the District of Columbia, their case was ultimately transferred to the Eastern District of Virginia. *See Attkisson*, 241 F. Supp. 3d 207. Although the district court's decision to transfer the case was based on a special venue provision governing claims brought under the Federal Tort Claims Act ("FTCA"), namely 28 U.S.C. § 1402(b), the court's analysis is instructive. Section 1402(b) requires that FTCA claims "be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C.

§ 1402(b). Despite the Plaintiffs' bare allegations that the alleged unlawful surveillance was "carried out" in the District of Columbia, the court concluded that the Eastern District of Virginia was instead where the "the act or omission complained of occurred." *Attkisson*, 241 F. Supp. 3d at 212-13.

The district court's decision to transfer the Attkissons' original suit to the Eastern District of Virginia is not binding on this Court, but it highlights the manner in which the Plaintiffs have gone about litigating their claims. When the court in the Eastern District of Virginia dismissed their claims against individuals allegedly based in the District of Columbia, they brought suit against a new set of individuals allegedly located in Maryland or connected to a group located in Maryland. Although the Attkissons now allege—purportedly on the basis of information from an anonymous source—that "some" of the surveillance of their home originated in Maryland, (ECF No. 15 ¶ 43) the remainder of the factual allegations of their Amended Complaint are insufficient at this stage to support the conclusion that a "substantial part of the events or omissions giving rise" to their claims occurred in Maryland. 28 U.S.C. § 1391(b)(2). The Plaintiffs clearly state in the Amended Complaint that a substantial part of the conduct at issue in this case occurred in the Eastern District of Virginia, and they have already once been told that such district is the proper venue for their claims. In light of the Plaintiffs' own admissions, their numerous factual allegations related to activities in Virginia, and a dearth of factual allegations related to conducted performed in Maryland, the Plaintiffs have not carried their burden of showing that venue is proper in this district.

Although only Defendants Rosenstein and Henry have filed a Motion to Dismiss, their Motion raises a defect in venue that applies equally to all of Plaintiffs' claims. *See Rollins v.*

*Rollins Trucking, LLC*, Civil No. JKB-15-3312, 2016 WL 81510, at *6 (D. Md. Jan. 7, 2016) ("Courts in this District have *sua sponte* dismissed meritless claims against nonmoving parties where the claimant has had a fair opportunity to argue the legal sufficiency of his claim."); *Wright v. Donegal Ins. Companies*, Civil No. WDQ-06-827, 2006 WL 4748707, at *1 (D. Md. June 7, 2006) (dismissing plaintiff's claims *sua sponte* against defendants that did not file a motion to dismiss because another defendant's motion raised defects that applied equally to all claims). Accordingly, this Court will *sua sponte* dismiss Plaintiffs' claims against the Defendants who did not file a Motion to Dismiss, but will allow Plaintiffs the opportunity to address this defect in a Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Defendants Rosenstein and Henry's Motion to Dismiss (ECF No. 17) is GRANTED. Specifically, the Plaintiffs' Amended Complaint is DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure with respect to the Plaintiffs' claims against Defendants Rosenstein and Henry.

The Plaintiffs' Amended Complaint is DISMISSED under Rule 12(b)(3) as to the remaining Defendants due to the Plaintiffs' failure to carry their burden of showing that venue is proper in the District of Maryland. As a general rule, leave to amend a complaint to address deficiencies in an original complaint is freely given pursuant to Rule 15(a). *See* William W. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 9:286. Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of the case with prejudice. *See Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003). However, there is also authority that leave to amend does not

need to be granted unless requested by the plaintiff. *See Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555-56 (5th Cir. 2007); *see also* Schwarzer, *et al.*, Federal Civil Procedure § 9:287.10. Nevertheless, leave to amend may be denied if such amendment is deemed futile. Schwarzer, *et al.*, *Federal Civil Procedure* § 9:294.1; *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

The Plaintiffs have failed to allege any factual allegations with respect to actual conduct related to the purported surveillance of their Virginia home which occurred in Maryland. Nevertheless, if the Plaintiffs possess facts to cure such manifest deficiency addressed in this Memorandum Opinion, they may file a Second Amended Complaint within fifteen days of this Opinion, i.e. by March 31, 2021.[1] Such a Second Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. *Abaginin*, 545 F.3d at 742. Accordingly, the Dismissal with respect to the remaining Defendants will initially be WITHOUT PREJUDICE. If a Second Amended Complaint is not filed by March 31, 2021, the Clerk of this Court is instructed to CLOSE this case with a DISMISSAL WITH PREJUDICE.

A Separate Order follows.

Dated: March 16, 2021

                                                               /s/
                                          Richard D. Bennett
                                          United States District Judge

---

[1] Schwarzer, *et al.*, *Federal Civil Procedure* § 9:289. The time within which plaintiff must serve and file the amended complaint is ordinarily set by the court.