**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SHARYL THOMPSON ATTKISSON,** *et al.*, | |
| *Plaintiffs,* | |
| **v.** | **Civil No. 1:20-cv-00068-JRR** |
| **SHAUN WESLEY BRIDGES,** *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Shaun Bridges' Motion for Summary Judgment.  (ECF No. 109; the "Motion.")  The court has reviewed all papers.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, by accompanying order, the Motion will be granted.

## I.   BACKGROUND

Plaintiff Sharyl Attkisson  ("Attkisson") was an investigative news reporter at CBS News.  (Second Amended Complaint, ECF No. 35 ¶ 10.)  Plaintiff Sarah Attkisson is the daughter of Attkisson.  (First Amended Complaint, ECF No. 15 ¶ 11.)  Defendant Sean Bridges was a Special Agent with the United States Secret Service.  (ECF No. 35 ¶ 4.)  The instant case arises from Defendant Bridges' alleged unlawful surveillance and hacking of Plaintiffs' computer systems.  *Id.* ¶ 6.

### A.   Procedural History

Upon discovery of the alleged hacking of their computers and phones, in December 2014, Plaintiffs filed suit in the Superior Court of the District of Columbia against the former U.S.

Attorney General Eric Holder, former Postmaster General Patrick Donahoe, and unknown agents of the Department of Justice ("DOJ"), the United States Postal Service ("USPS"), and the United States as "Doe" defendants, alleging violations of the First and Fourth Amendments to the U.S. Constitution based on the alleged electronic intrusions on their devices. *See Attkisson v. Holder, et al.*, 113 F. Supp. 3d 156, 159 (D.D.C. 2015). Defendants Holder and Donahoe removed the case to the U.S. District Court for the District of Columbia. *Id.* at 159. The case was then transferred to the U.S. District Court for the Eastern District of Virginia; the court dismissed the complaint. *Attkisson v. Holder, et al.*, No. 1:17-cv-364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017). The United States Court of Appeals for the Fourth Circuit affirmed the dismissal. *Attkisson v. Holder et al.*, 925 F.3d 606 (4th Cir. 2019).

On January 10, 2020, Plaintiffs filed suit in this court against Defendants Rod Rosenstein, Shawn Henry, Shaun Wesley Bridges, Robert Clarke, Ryan White, and unnamed government officials, alleging violation of the Fourth Amendment to the Constitution pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (Count I); and violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511 and 2520 (Count II). (Complaint, ECF No. 1.) On February 14, 2020, Plaintiffs filed an Amended Complaint. (Amended Complaint; ECF No. 15.) On April 13, 2020, Defendants Shawn Henry and Rod Rosenstein filed a motion to dismiss. (ECF No. 17.) The court granted the motion, dismissed the Amended Complaint with prejudice as to Defendants Henry and Rosenstein, *sua sponte* dismissed the Amended Complaint without prejudice as to the other Defendants, and allowed Plaintiffs the opportunity to address the venue defect[1] in the Amended Complaint. (ECF Nos. 31 and 32.)

---

[1] The court concluded that "[t]he facts as currently pled are not 'sufficiently substantial' to support a finding that the District of Maryland is a proper venue for this suit." (ECF No. 31 at 17.)

On April 5, 2021, Plaintiffs filed the Second Amended Complaint against Defendants Shaun Bridges, Ryan White,[2] and unknown named agents of the DOJ.  (ECF No. 35.)   On November 12, 2021, Defendant Bridges filed a motion to dismiss for failure to state a claim, which the court granted in part and denied in part.  (ECF Nos. 58 and 71.)  The motion, construed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c), was granted as to Plaintiffs' *Bivens* claim (Count I) and denied as to Plaintiffs' ECPA claim (Count II).  (ECF No. 71.)  On January 4, 2022, the court issued a scheduling order.  (ECF No. 72.)  Between January 2022 and September 2022, the court amended the scheduling order on multiple occasions to extend discovery.  (*See* ECF Nos. 74, 79, 83, and 87.)

On November 11, 2022, Plaintiffs filed a motion to amend the scheduling order and Defendant opposed.  (ECF Nos. 88 and 89.)  Plaintiffs requested to amend the scheduling order, in part, for the following reason:

> On October 31, 2022, the Plaintiffs received a letter from the Department of Justice (DOJ) denying the "*Touhy*"[3] request to depose a list of agents and employees of the DOJ, FBI, Inspector General, and U.S. Postal Service (approximately 6 witnesses). The requests date back to June and July of 2022, and the denial is based on the Government's reliance on the *Touhy* requirements. As the Court is aware, until the Agency's final administrative action is taken, parties are without authority to proceed. Given that the witnesses requested were either involved in the actual investigation of the subject electronics; involved in the actual investigation of the alleged illegal surveillance; or possess factual information relevant to the alleged illegal surveillance, the Plaintiff is in the process of filing appropriate motions to litigate the denial of access to the facts and seek court assistance.

---

[2] On December 22, 2021, the Clerk of Court entered default as to Ryan White.  (ECF No. 67.)
[3] "Pursuant to 5 U.S.C.A. § 301, executive branch agencies may prescribe regulations for their own internal governance, conduct of business, record keeping, and document custody."  *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 272 n.3 (4th Cir. 1999).  "Such regulations are commonly known as 'housekeeping' regulations, and do not authorize the agency to withhold information from the public."  *Id.*  "Housekeeping regulations that create agency procedures for responding to subpoenas are often termed *Touhy* regulations, in reference to the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S. Ct. 416, 95 L.Ed. 417 (1951))."  *Id.*

(ECF No. 88 at 2.)  The court denied the motion to amend the scheduling order and ordered that the parties file a single, joint letter setting forth their respective positions as to a stay of the action to allow Plaintiffs to pursue judicial review[4] of DOJ's denial of Plaintiffs' *Touhy* requests.  (ECF No. 92.)  On January 31, 2023, upon consideration of the parties' joint request, the court amended the scheduling order.  (ECF No. 95.)  On May 2, 2023, Plaintiffs filed a motion for a status conference noting that some discovery remained outstanding.  (ECF No. 103.)  The court held a status conference and declined to amend the scheduling order again.  (ECF No. 106.)

On June 1, 2023, Defendant Bridges filed the instant Motion.  (ECF No. 109.)  Defendant Bridges moves for summary judgment on Plaintiffs' ECPA claim on the basis that Plaintiffs have developed no evidence to support their claim against him.  (ECF No. 109-1 at 17-21.)  Defendant Bridges further argues that Plaintiffs cannot oppose the Motion by way of a Rule 56(d) affidavit because they have had ample time and opportunity to develop discovery to support their case.  *Id.* at 22-24.

### B.   <u>Undisputed Material Facts</u>

During Defendant's time with the Secret Service between 2009 and 2015, he was not tasked with conducting electronic surveillance or monitoring of any person.  (Def.'s Mot., Shaun Bridges Dep., Exhibit L, ECF No. 109-14 at 42:7-24.)  Defendant was neither asked to conduct, nor did he conduct, surveillance or monitoring of Attkisson or her family.  *Id.* at 42:19-24.

On January 23, 2015, the DOJ Office of Inspector General ("OIG") investigated Plaintiffs' allegations that Attkisson's personal laptop and two work laptops "were remotely compromised

---

[4] "A party challenging an agency's *Touhy*-based denial of a subpoena or request for testimony 'must proceed under the APA, and the federal court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard.'"  *Bobreski v. U.S. E.P.A.*, 284 F. Supp. 2d 67, 73-74 (D.D.C. 2003) (quoting *Houston Business Journal v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996)).  "The party challenging the denial bears the burden of showing that the denial was arbitrary and capricious, and must make a strong showing that the testimony is necessary."  *Id.*

by an unknown intruder." (Def.'s Mot., DOJ OIG Report, Exhibit K, ECF No. 109-13.) The DOJ OIG concluded that its "investigation was not able to substantiate the allegations that Attkisson's computers were subject to remote intrusion by FBI, other government personnel, or otherwise." *Id.*

Mark McLarnon, an employee at the cybersecurity firm CyberPoint, analyzed Attkisson's CBS computers. (Def.'s Mot., Mark McLarnon Dep., Exhibit N, ECF No. 109 at 4:16-5:4.) In his forensic analysis, McLarnon concluded that one of the laptops was subject to an unauthorized interaction, but his review and analysis did not demonstrate that any unauthorized interaction was the result of a remote intrusion. (Def.'s Mot., Mark McLarnon Dep., Exhibit N, ECF No. 109 at 22:16-23:19, 49:9-21.) CyberPoint's McLarnon did not attribute any unauthorized interaction to a specific source, entity, or person. *Id.* at 49:22-50:1.

## II.   **LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."

*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Id.* (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "In other words, a factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

III.   **ANALYSIS**

A.   **Rule 56(d)**

Pursuant to Federal Rule of Civil Procedure 56(d), Plaintiffs argue that the court should deny the Motion or defer ruling on it because Plaintiffs cannot present facts essential to justify their opposition.  (ECF No. 110 at 1.)

"Rule 56(d) provides that a district court must defer ruling on a summary-judgment motion if the party opposing the motion 'shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 250 (4th Cir. 2018) (quoting FED. R. CIV. P. 56(d)).  In general, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).  "However, a court may deny a Rule 56(d) motion 'when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment.'" *Hodgin*, 885 F.3d at 250 (quoting *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014)).

The first inquiry under Rule 56(d) is "whether the party seeking to defer a ruling on that motion had a reasonable opportunity to conduct essential discovery." *Hodgin*, 885 F.3d at 250.  Plaintiffs argue that a "favorable ruling" on their petition pending in this court, *Attkisson v. United States of America*, No. 1:23-cv-01106-JRR, "would be the Plaintiffs first real opportunity to obtain meaningful discovery essential to prove its claims."  (ECF No. 110 at 12.)

On April 25, 2023, Petitioners Sharyl Attkisson and Sarah Attkisson filed a separate action pursuant to the Administrative Procedure Act ("APA") against Respondents United States of America, DOJ, and USPS challenging the government's response to their request for evidence.

*See Attkisson, et al. v. United States of America, et al.*, 1:23-cv-01106-JRR (D. Md. 2023) (the "APA Case").  On October 18, 2023, the court entered an order extending the time for Respondents to file the administrative record and to set a briefing schedule.  (APA Case ECF No. 23.)  The operative briefing schedule required Respondents to file a motion for summary judgment by November 7, 2023.  *Id.*

The same day the court set the briefing schedule, Petitioners filed a motion to modify the briefing schedule and requested that the court "modify the schedule set forth in [APA Case ECF No. 23] to accommodate [Petitioners'] right to review the record submitted by the Government and, if necessary and warranted, submit a motion to supplement the record."  (APA Case ECF No. 24.)  Petitioners contended that the government failed to submit the full record and, upon its receipt, "they request a reasonable time to review the record and, if necessary or warranted, submit a motion to supplement the record as permitted by law, prior to a briefing, which appears to be their right under the law."  *Id.*  On November 9, 2023, the court denied the motion to modify without prejudice on the basis that the motion failed to propose a modified schedule[5] and failed to attach a proposed order.  (APA Case ECF No. 26.)  Importantly, the order at ECF No. 26 provides: "Upon the filing a motion which fashions a specific modified schedule, and which has been shared with and discussed with Respondents to seek consent, the court will consider a renewed motion."

In the three months since, Petitioners (Plaintiffs here) have failed to propose a modified schedule or to file a motion to supplement the record.  Even while the instant Motion was pending here – knowing full well they would have to rely on a 56(d) affidavit, they have filed nothing and otherwise taken no discernible steps to resuscitate or develop the APA Case.  Viewed generously,

---

[5] "Notwithstanding the government Respondents' expression that they do not oppose a modification in principal, the court declines to guess at what modification Petitioners seek."

Plaintiffs have failed to pursue the APA Case in any meaningful fashion whatsoever – rather betraying their position here regarding its importance.

Plaintiffs cannot have it both ways – which is to say, Plaintiffs will not be heard to complain that they cannot meet their Rule 56 challenge in this case because the record has not been developed in the APA Case.  If that be so, it is their own doing.  As explained, Plaintiffs have effectively done nothing to pursue the APA Case and the court will not allow the instant action to languish indefinitely on the basis that the APA Case might, under some undefined theory, bear fruit – especially given that Plaintiffs have demonstrated no interest or intention to fertilize it. Moreover, Plaintiffs have failed to pursue (or to explain why they have failed to pursue) evidence in any theater to corroborate Ryan White's statements, the lone reservoir of any information about what Plaintiffs contend Defendant Bridges did to justify ensnaring him in this action over several years.  (Def.'s Mot., Sharyl Attkisson Dep., Exhibit A, ECF No. 109-3 at 151:6-11, 204:13-17.)

Plaintiffs have had an extraordinarily robust opportunity to pursue and develop evidence in support of their claims against Defendant Bridges; this court has not been stingy with extensions. But, at long last, theories woven together with possibilities and maybes and conjecture will not suffice to generate a triable issue.  Theories about other individuals and organizations adjacent to Defendant Bridges are not admissible against Mr. Bridges.  In sum, Plaintiffs offer no explanation for their failure to pursue what they assert is discovery essential to their response; and, for the reasons explained, reliance on the APA Case is unavailing.

The second inquiry is whether Plaintiffs identify "specific information that would create a genuine dispute of material fact."  *Hodgin*, 885 F.3d at 250; *see Sampson v. United States*, No. CIV.A. DKC 15-0243, 2015 WL 5008780, at *3 (D. Md. Aug. 20, 2015) (explaining that "[c]ourts interpreting Rule 56(d) have consistently held that a nonmovant's request may be denied if 'the

additional evidence sought for discovery would not have by itself created a genuine issue of

material fact sufficient to defeat summary judgment'") (quoting *Ingle ex rel. Estate of Ingle v.*

*Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)).   Importantly, "Rule 56(d) does not authorize 'fishing

expedition[s].'" *Sampson*, 2015 WL 5008780, at *3 (quoting *Morrow v. Farrell*, 187 F. Supp. 2d

548, 551 (D. Md. 2002), *aff'd*, 50 F. App'x 179 (4th Cir. 2002)); *see Lowman v. Maryland Aviation*

*Admin.*, No. CV JKB-18-1146, 2019 WL 133267, at *9 (D. Md. Jan. 8, 2019) (noting that "[w]here

a Rule 56(d) request is grounded in speculation or would amount to a fishing expedition, courts

tend to deny the request") (internal quotation marks omitted)).   In short, Plaintiffs fail to satisfy

this factor.

While Plaintiffs identify individuals they contend they wish to depose, they offer nothing

whatsoever regarding what they reasonably expect such depositions would yield as against

Defendant Bridges.   Plaintiffs ask this court to defer ruling on the Motion for what, in essence, is

textbook verboten: a fishing expedition.   The parties have been engaged in discovery since January

2022.   Plaintiffs' Rule 56(d) request is grounded in speculation and, even if credited to the fullest

extent, identifies no specific information that would generate a genuine dispute of material fact as

to Defendant Bridges' alleged wrong-doing.

For these reasons, the court denies Plaintiffs' Rule 56(d) request and will proceed to rule

on the Motion.

### B.       Defendant's Motion for Summary Judgment[6]

Defendant Bridges moves for summary judgment on Plaintiffs' remaining ECPA claim.

Plaintiffs allege that Defendant violated the ECPA, 18 U.S.C. §§ 2511, 2520, by "personally

---

[6] Because Plaintiffs did not substantively respond to the Motion, the Motion is essentially unopposed.   Nonetheless, the court must still undertake the Rule 56 analysis as to triable disputes and legal entitlement to judgment.   *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

intercept[ing] or endeavor[ing] to intercept the Plaintiffs' wire, oral, or electronic communications in violation of the law and accepted precedent." (ECF No. 35 ¶ 99.) Specifically, Plaintiffs allege:

> Following the Fourth Circuit's opinion, a former government actor (Ryan White) came forward for the first time and revealed that he personally participated in the illegal operation aimed at Ms. Attkisson and her family.

> During all relevant times, Defendant WHITE worked as an undercover informant for the Department of Justice and as a contractor operating out of the Baltimore Field Office under a group supervised by Rod Rosenstein. In this capacity, Defendant WHITE conducted work for the FBI, United States Secret Service, Drug Enforcement Administration, and the Bureau of Alcohol Tobacco and Firearms.

> ***

> When Defendant WHITE voluntarily came forward he admitted to Plaintiffs' representatives that he worked out of the Baltimore Field Office during the relevant time period; admitted that Rod Rosenstein supervised and controlled the activities of the Silk Road Task Force, along with both he and Defendant BRIDGES; admitted that he and Defendant BRIDGES worked together with others to conduct the illegal surveillance complained of herein; and admitted that the Plaintiffs' computer system was illegally accessed using U.S. Government resources; and admitted that the illegal activities were planned, conducted, and implemented from Maryland.

> Defendant WHITE further admitted that Defendant BRIDGES was tasked with surveillance of the "Fast and Furious" project, even prior to Plaintiff Attkisson's involvement, and that Defendant BRIDGES reported to Shawn Henry of the FBI.

> Defendant WHITE also reported that Mr. Henry was a computer expert, and that he and the people working with and for him, including Defendant BRIDGES, used software programs developed for the specific purpose of conducting illegal surveillance.

> Defendant WHITE also reported that between 2011 and 2015, he worked directly with the people responsible for violating Plaintiffs' rights, including Defendant BRIDGES, and described how Defendant BRIDGES informed him that the work assignment was on the "dirty side" and was one that "they did not want to get

Case 1:20-cv-00068-JRR   Document 115   Filed 02/06/24   Page 12 of 15

public". The "they" in Defendant WHITE's reference was described by him as "DOJ, the FBI, and the intelligence community".

Defendant WHITE also very clearly reported that his group was ordered to commit illegal surveillance of Ms. Attkisson, her family, her co-workers, and the local team running the "Fast and Furious" program in Arizona. Although Defendant WHITE made clear that others were involved in the illegal surveillance, it was primarily DEFENDANT Bridges who was tasked with "hacking and violating computer systems" because that was his specialty for the Government and the Secret Service.

Defendant WHITE likewise reported that he was personally present with Defendant BRIDGES on "many occasions" when they were "accessing Attkisson's computers" and "retrieving information already accessed or manipulated" and "erasing information" or "passing the information on" to contacts at the DOJ and FBI.

\*\*\*

Defendant WHITE likewise explained how Defendant BRIDGES would provide him with detailed descriptions of the illegal surveillance programs and methods being used on Plaintiffs and would even show him the methods used to hide and conceal traceability.

Defendant WHITE reported that Defendant BRIDGES was specifically told to "target Ms. Attkisson's husband" and "to get that b---h under control", and that these directives came directly from Rod Rosenstein who had reportedly received them directly from Attorney General Eric Holder.

The Defendants, individually and in concert, personally used, endeavored to use an electronic, mechanical, or other device to intercept Plaintiffs' oral communications. Such device or devices were affixed to or transmitted a signal through a wire used in wire communications, and was for the purpose of obtaining information relating to business which affects interstate commerce. All, or at least virtually all, of such conduct was planned, initiated, conducted, and occurred in the District of Maryland.

The Defendants, individually and in concert, personally disclosed or endeavored to disclose the contents of Plaintiffs' wire, oral or electronic communications, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communications.

> According to Defendant WHITE's own admissions, the above alleged conduct occurred with direct authorization of high-level government officials, including Mr. Rosenstein and Mr. Holder, and without authorization from a court of competent jurisdiction.

(ECF No. 35 ¶¶ 63-64, 66-71, 74-75, 100-102.)

Under Section 2511, "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication" violates the ECPA.  18 U.S.C. § 2511(1)(a).[7]  Section 2511 makes clear that Plaintiffs must prove that their wire, oral, or electronic communications were intercepted, disclosed, or used in violation of the statute, and that Defendant Bridges is responsible for intercepting, disclosing, or using (or procuring any other person to do the same).

Defendant argues that he is entitled to summary judgment because Plaintiffs have failed to offer any evidence tending to demonstrate that Defendant violated the EPCA, and, therefore, no reasonable factfinder could resolve the issue in Plaintiffs' favor.  (ECF No. 109-1 at 18.)  The court agrees.

In his deposition, Defendant testified:

> Q.   During your time with the Secret Service between 2009 and·2015, were you ever tasked with conducting electronic surveillance or monitoring of any person?
>
> A.   No, I have never been trained in that -- in that form of electronic surveillance. I have never received any training in that. I have never been assigned to any group that conducts that sort of electronic behavior.
>
> Q.   During your time with the Secret Service between 2009 and

---

[7] Plaintiffs pursue their ECPA claim against Defendant Bridges under ECPA's private right of action, which provides that:

> any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in a violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520.

> 2015, did you work with other individuals who did conduct electronic surveillance or monitoring of people, persons, humans?
>
> A.    Not to the best of my recollection.
>
> Q.    During your time with the Secret Service between 2009 and 2015, were you ever asked to or did you ever conduct any surveillance or monitoring of Sharyl Attkisson or her family or anyone related to any of her stories, whether electronic or otherwise?
>
> A.    No.

(Def.'s Mot., Shaun Bridges Dep., Exhibit L, ECF No. 109-14 at 42:7-24.)  Defendant Bridges

also points out that the DOJ OIG investigated Plaintiffs' allegations and was unable to corroborate

that Plaintiffs' computers were subject to a remote intrusion.   (Def.'s Mot., DOJ OIG Report,

Exhibit K, ECF No. 109-13.)  Moreover, CyberPoint's McLarnon (who analyzed Attkisson's CBS

computers) testified that he could not confirm that anyone accessed or monitored Attkisson's CBS

computers:

> Q.    Okay. I want to make sure I understand a few things that you described in your testimony so far today. So you were talking about all of the things that your report did find with respect to these two computers that CyberPoint analyzed. So there is certain things that are described as unauthorized interactions, but I just want to be clear that I understand some of the clarifying comments you made when you were talking with Mr. Turner. Am I correct in understanding that the analysis that CyberPoint completed did not definitively show that any of the unauthorized interactions that are described in the report were the result of remote intrusion?
>
> A.    That's correct.
>
> Q.    And do I also understand correctly that the analysis that CyberPoint completed does not definitively prove that any of those unauthorized interactions are attributable to a specific source, entity or person?
>
> A.    That's also correct.

(Def.'s Mot., Mark McLarnon Dep., Exhibit N, ECF No. 109 at 49:8-50:1.)

Plaintiffs do not dispute the authenticity, relevance or weight of the record evidence on which Defendant Bridges basis his Motion, and otherwise fail to generate a dispute of material fact pertinent to the Motion.  In sum, Plaintiffs do not offer any admissible evidence on which a reasonable juror could conclude that Defendant, or a person procured by Defendant, intercepted or disclosed Plaintiffs' electronic communications, or otherwise violated the ECPA in any way, shape or form.  Accordingly, the Motion will be granted.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendant's Motion for Summary Judgment (ECF No. 109) is **GRANTED**.

/S/
_____
Julie R. Rubin
United States District Judge

February 6, 2024